# Exhibit G



Rae Lovko <rlovko@greenfirelaw.com>

## Wild Horse Education v BLM (Callaghan Complex) - IBLA 2026-0112

4 messages

---

**Rae Lovko** <rlovko@greenfirelaw.com>              Wed, Apr 15, 2026 at 3:45 PM
To: janell.bogue@sol.doi.gov

I am writing to request information regarding BLM's placement of the Callaghan Complex on its FY2026 Tentative Wild Horse and Burro Gather and Fertility Control Schedule as of March 13, 2026. In this schedule, BLM identifies gather operations in the Complex from 7/10/26 - 8/31/26. During this timeframe, the agency plans on gathering and permanently removing 2,000 wild horses.

Before deciding whether to seek a TRO or preliminary injunction to address these gather operations, my clients (Wild Horse Education, Laura Leigh, Tammi Adams) need some additional information, which I am hoping you can provide. Specifically, could you tell me what trap locations will be used for these gather operations? And, how many horses at each location does BLM anticipate gathering? (The plan that BLM creates for its employees and outside contractors to follow for these gather operations should contain this information.)

I appreciate your quick attention to this matter.

Best,

--

Rae Lovko, Esq.
**Greenfire Law, PC**
2748 Adeline Street, Suite A
Berkeley, CA 94703
T: 510.900.9502 x 710
rlovko@greenfirelaw.com

PRIVILEGE AND CONFIDENTIALITY NOTICE
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact me immediately by return e-mail or at 510-900-9502 x 2, and destroy the original transmission and its attachments without reading or saving in any manner.

---

**Bogue, Janell M** <janell.bogue@sol.doi.gov>            Fri, Apr 17, 2026 at 3:08 PM
To: Rae Lovko <rlovko@greenfirelaw.com>

Ms. Lovko,

Thanks for your email. For the gather operations in the Callaghan Complex that are scheduled to begin in July, the BLM does not yet know where traps will be located or how many excess wild horses will be gathered at any specific trap/location.

Best,
Janell

Janell Bogue
U.S. Department of the Interior
Office of the Solicitor, Pacific Southwest Region
2800 Cottage Way, E-1712, Sacramento, CA 95825

916.978.5690
janell.bogue@sol.doi.gov

---

**From:** Rae Lovko <rlovko@greenfirelaw.com>
**Sent:** Wednesday, April 15, 2026 3:45 PM
**To:** Bogue, Janell M <janell.bogue@sol.doi.gov>
**Subject:** [EXTERNAL] Wild Horse Education v BLM (Callaghan Complex) - IBLA 2026-0112

> **This email has been received from outside of DOI - Use caution before clicking on links, opening attachments, or responding.**

[Quoted text hidden]

---

**Rae Lovko** <rlovko@greenfirelaw.com>                          Fri, Apr 17, 2026 at 4:19 PM
To: "Bogue, Janell M" <janell.bogue@sol.doi.gov>

Does the agency have any idea when this might be decided?

[Quoted text hidden]

---

**Bogue, Janell M** <janell.bogue@sol.doi.gov>                    Tue, Apr 21, 2026 at 5:53 PM
To: Rae Lovko <rlovko@greenfirelaw.com>

Ms. Lovko,

The BLM does not currently have a timeline for the information that you requested regarding Callaghan Complex trap site locations and specific numbers of animals to be gathered at each trap/location.

Thanks,
Janell

Janell Bogue
U.S. Department of the Interior
Office of the Solicitor, Pacific Southwest Region
2800 Cottage Way, E-1712, Sacramento, CA 95825
916.978.5690
janell.bogue@sol.doi.gov

---

**From:** Rae Lovko <rlovko@greenfirelaw.com>
**Sent:** Friday, April 17, 2026 4:19 PM
**To:** Bogue, Janell M <janell.bogue@sol.doi.gov>
**Subject:** Re: [EXTERNAL] Wild Horse Education v BLM (Callaghan Complex) - IBLA 2026-0112

[Quoted text hidden]

6/8/26, 12:49 PM Greenfire Law, PC Mail - Wild Horse Education v. BLM (2:26-cv-1524) (D. Nev.)

Case 3:26-cv-00423-MMD-CSD Document 25-1 Filed 06/10/26 Page 4 of 14



Rae Lovko <rlovko@greenfirelaw.com>

## Wild Horse Education v. BLM (2:26-cv-1524) (D. Nev.)
22 messages

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>          Tue, May 19, 2026 at 10:24 AM
To: "brent@brentreshlaw.com" <brent@brentreshlaw.com>, "jblome@greenfirelaw.com" <jblome@greenfirelaw.com>,
"rlovko@greenfirelaw.com" <rlovko@greenfirelaw.com>

Counsel - -

While the United States has yet to confirm service, I wanted to let you know that we were made aware of the attached complaint filed yesterday in the District of Nevada. I also wanted to inquire whether your clients intend to seek emergency relief and, if so, about negotiating a reasonable briefing schedule (in the event emergency relief is not requested, we will certainly be prepared to proceed in the normal course). I have a number of upcoming deadlines over the next few weeks but am open to discussing a reasonable accommodation for everyone.

Much obliged,

Davis

---



**Davis A. Backer**

Senior Trial Attorney

U.S. Department of Justice

Environment and Natural Resources Division | Wildlife & Marine Resources Section

999 18th Street, North Terrace, Suite 600 | Denver, CO 80202

202 | 305-5469

*This message may contain privileged and confidential information, such as attorney work-product or attorney-client communications, and it is intended solely for the recipient indicated above. If you have received this message in error, please delete it and notify the sender immediately.*

📄 **Wild Horse Eduction, et al. v. U.S. Department of Interior, et al. COMPLAINT.pdf**
477K

**Rae Lovko** <rlovko@greenfirelaw.com>          Tue, May 19, 2026 at 12:44 PM
To: "Backer, Davis (ENRD)" <Davis.Backer@usdoj.gov>
Cc: Brent Resh <brent@brentreshlaw.com>, Jessica Blome <jblome@greenfirelaw.com>

Plaintiffs are aware the Callaghan Complex is on BLM's FY2026 Tentative Wild Horse and Burro Gather and Fertility Control Schedule for 7/10/26 - 8/31/26. During this timeframe, the agency plans on gathering and permanently removing 2,000 wild horses.

Before deciding whether to seek a TRO or preliminary injunction to address these gather operations, my clients (Wild Horse Education, Laura Leigh, Tammi Adams) need some additional information, which I am hoping you can provide. Specifically, could you tell me what trap locations will be used for these gather operations? And, how many horses at each location does BLM anticipate gathering?

Last month, Janell Bogue with DOI said this information was not yet decided, but hopefully it is available now.

If BLM's gather operations appropriately allocate the removal process throughout the Complex, the plaintiffs do not intend on seeking emergency relief; however, if the agency cannot explain how the process will be implemented, then emergency relief is likely.

I am happy to set up a teleconference to address this matter, if you like.

Rae Lovko, Esq.
**Greenfire Law, PC**
2748 Adeline Street, Suite A
Berkeley, CA 94703
T: 510.900.9502 x 710
rlovko@greenfirelaw.com

PRIVILEGE AND CONFIDENTIALITY NOTICE
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact me immediately by return e-mail or at 510-900-9502 x 2, and destroy the original transmission and its attachments without reading or saving in any manner.

[Quoted text hidden]

---

**2 attachments**


**image001.jpg**
2K


**image001.jpg**
2K

---

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>          Tue, May 19, 2026 at 12:46 PM
To: Rae Lovko <rlovko@greenfirelaw.com>
Cc: Brent Resh <brent@brentreshlaw.com>, Jessica Blome <jblome@greenfirelaw.com>

Thank you for the quick response, Rae. I'll pass this along to my counterparts at BLM and follow up as soon as I learn more.

Much obliged,

Davis

[Quoted text hidden]

Case 3:26-cv-00423-MMD-CSD   Document 25-1   Filed 06/10/26   Page 6 of 14

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>                    Wed, May 20, 2026 at 9:04 AM
To: Rae Lovko <rlovko@greenfirelaw.com>
Cc: Brent Resh <brent@brentreshlaw.com>, Jessica Blome <jblome@greenfirelaw.com>

Rae - -

I spoke with BLM and, unfortunately, it does not sound like this information is available. BLM does not prepare the details you inquired about. The contractor BLM works with to conduct the actual gathers will select the trap sites and determine how many hoses will be gathered at any individual trap. The contractor makes that call based on where horses are generally located within the gather area, where they are having success trapping horses, etc. In other words, BLM does not have pre-set trap sites, and individual contractors have different preferences for operations. In this case, it doesn't sound like BLM has yet put the contract out for bid so it doesn't know which contractor will be doing the work.

BLM can commit, however, it that will <u>not</u> gather and remove below the low-AML in any of the HMAs at issue. I understand that the Bald Mountain HMA has a current estimated population of 282 wild horses and BLM shared with me that they will not gather below the low-AML of 129 on that HMA. It sounds like the estimated populations on both Callaghan and South Shoshone are high enough that gathering to low-AML won't be possible on either of those HMAs either.

Let me know if you'd like to discuss any of this in real time.

Much obliged,

Davis

---

**From:** Rae Lovko <rlovko@greenfirelaw.com>
**Sent:** Tuesday, May 19, 2026 1:45 PM
**To:** Backer, Davis (ENRD) <Davis.Backer@usdoj.gov>
**Cc:** Brent Resh <brent@brentreshlaw.com>; Jessica Blome <jblome@greenfirelaw.com>
**Subject:** [EXTERNAL] Re: Wild Horse Education v. BLM (2:26-cv-1524) (D. Nev.)

Plaintiffs are aware the Callaghan Complex is on BLM's FY2026 Tentative Wild Horse and Burro Gather and Fertility Control Schedule for 7/10/26 - 8/31/26. During this timeframe, the agency plans on gathering and permanently removing 2,000 wild horses.

[Quoted text hidden]

[Quoted text hidden]

---

**Rae Lovko** <rlovko@greenfirelaw.com>                              Wed, May 20, 2026 at 2:22 PM
To: "Backer, Davis (ENRD)" <Davis.Backer@usdoj.gov>

Typically, BLM gives the contractor a logistical number targeted for each HMA. This is necessary for the purpose of determining the location and size of temporary holding corrals, estimated relocation dates, etc. For example, the agency might provide that after 500 horses are removed from North and South Shoshone temporary corrals, the contractors will move south to accommodate Callaghan and Hickison. After capturing an additional 500 horses, operations will move from Highway 305 to 306 for the remainder of the operation. This will involve an estimated 400 horses from Bald Mountain, 300 on the western edge and outside Callaghan and 300 off the western edge and outside South Shoshone. When does BLM believe such information will be available?

I appreciate that BLM promises not to gather and remove below the low-AML in any of the HMAs at issue. I'll talk to my client to see if this is satisfactory for purposes of not having to seek emergency relief.

NEW QUESTION: Will defendants stip that plaintiffs have exhausted administrative remedies, which would allow us to dismiss the IBLA case and just focus on civil litigation?

Best,

Rae

[Quoted text hidden]

--

[Quoted text hidden]

---

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>      Fri, May 22, 2026 at 10:04 AM
To: Rae Lovko <rlovko@greenfirelaw.com>

Hi, Rae - -

The BLM state WHB lead confirmed that there are no targeted/logistical numbers per HMA/area for the upcoming Callaghan gather. Regarding your last question, while Defendants cannot waive any affirmative defenses they may have, I can represent that, at present, we do not anticipate raising any failure-to-exhaust arguments on the merits. My understanding is that the IBLA process is not a prerequisite to pursuing these claims in district court.

[Quoted text hidden]

---

**Rae Lovko** <rlovko@greenfirelaw.com>      Thu, May 28, 2026 at 1:44 PM
To: "Backer, Davis (ENRD)" <Davis.Backer@usdoj.gov>

Hi Davis,

1. When we have filed in District Court while an IBLA appeal was pending, the IBLA typically has stayed the appeal. As this hasn't occurred yet, that is why I was asking if you'd agree to allowing a dismissal without thereafter raising a failure to exhaust defense. In the alternative, we could jointly ask the IBLA to stay the appeal. Would you agree to that?

2. BLM's tentative gather schedule identifies the number of horses to be removed per HMA....except for the Callaghan Complex. We are quite concerned that the scheduled gather will not remove horses from each HMA but instead only focus on one HMA. For example, as it stands, the agency could remove 2,000 horses from S. Shoshone alone.

Plaintiffs complaint contends, in part, that the AMLs for each of the Complex's HMAs is far too low and should have been re-calculated with the latest HMAP. It is commonly known that these lands have held far more horses than currently allocated by AMLs for some time -- without any harm to land or other uses. While Plaintiffs do not object to the gather of 2,000 horses, the removal of any HMA to either low or high AML during such a gather would cause irreparable harm.

To ensure that this gather does not unlawfully target certain herds over others, would BLM agree that in gathering 2,000 horses from the Complex, the populations in each HMA will remain at or above 4x the current high AML? This would allow BLM to remove the targeted number of horses while allowing Plaintiffs to pursue the litigation on the merits of their claim.

 If this is not agreeable, then we need to discuss a briefing schedule for the Plaintiffs' emergency motion for a preliminary injunction.

Best,

Rae

[Quoted text hidden]

---

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>                    Fri, May 29, 2026 at 3:28 PM
To: Rae Lovko <rlovko@greenfirelaw.com>

Hi, Rae - -

Would you have time to discuss this over the phone on Monday? My schedule is currently wide open though earlier in the day tends to work a bit better for me.

Thanks!

db

[Quoted text hidden]

---

**Rae Lovko** <rlovko@greenfirelaw.com>                              Fri, May 29, 2026 at 3:38 PM
To: "Backer, Davis (ENRD)" <Davis.Backer@usdoj.gov>

1030 a.m. work?

Rae Lovko, Esq.
**Greenfire Law, PC**
2748 Adeline Street, Suite A
Berkeley, CA 94703
T: 510.900.9502 x 710
rlovko@greenfirelaw.com

PRIVILEGE AND CONFIDENTIALITY NOTICE
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact me immediately by return e-mail or at 510-900-9502 x 2, and destroy the original transmission and its attachments without reading or saving in any manner.
[Quoted text hidden]

---

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>                    Fri, May 29, 2026 at 3:39 PM
To: Rae Lovko <rlovko@greenfirelaw.com>

What time zone?

[Quoted text hidden]

---

**Rae Lovko** <rlovko@greenfirelaw.com>                              Fri, May 29, 2026 at 3:50 PM
To: "Backer, Davis (ENRD)" <Davis.Backer@usdoj.gov>

Pst

Rae Lovko, Esq.
**Greenfire Law, PC**
2748 Adeline Street, Suite A
Berkeley, CA 94703
T: 510.900.9502 x 710
rlovko@greenfirelaw.com

PRIVILEGE AND CONFIDENTIALITY NOTICE
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact me immediately by return e-mail or at 510-900-9502 x 2, and destroy the original transmission and its attachments without reading or saving in any manner.

[Quoted text hidden]

---

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>          Fri, May 29, 2026 at 3:51 PM
To: Rae Lovko <rlovko@greenfirelaw.com>

Sure, that would be fine. Should I try you at the number in your signature block?

[Quoted text hidden]

---

**Rae Lovko** <rlovko@greenfirelaw.com>          Mon, Jun 1, 2026 at 10:16 AM
To: "Backer, Davis (ENRD)" <Davis.Backer@usdoj.gov>

Call 510 685 9708

Rae Lovko, Esq.
**Greenfire Law, PC**
2748 Adeline Street, Suite A
Berkeley, CA 94703
T: 510.900.9502 x 710
rlovko@greenfirelaw.com

PRIVILEGE AND CONFIDENTIALITY NOTICE
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact me immediately by return e-mail or at 510-900-9502 x 2, and destroy the original transmission and its attachments without reading or saving in any manner.

[Quoted text hidden]

---

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>          Mon, Jun 1, 2026 at 10:55 AM
To: Rae Lovko <rlovko@greenfirelaw.com>
Cc: "Estacio, Adam (ENRD)" <Adam.Estacio@usdoj.gov>

Hi, Rae - -

Thanks for the call just now. Just to reiterate, re (1) below, please reach out to Janell Bogue re further proceedings before the IBLA. She's happy to discuss. Re (2) below, based on the BLM's FY26 proposed national gather schedule, it looks like for the *complexes*, BLM does not break out the proposed gather numbers by each HMA—it's complex wide. For those HMAs that do show precise gather targets, that's because those are standalone HMAs that are not a part of a larger complex.

6/8/26, 12:49 PM                    Greenfire Law, P.C. Mail - Wild Horse Education v. BLM (3:26-cv-00524) (Nev.)

Case 3:26-cv-00423-MMD-CSD    Document 25-1    Filed 06/10/26    Page 10 of 14

Unfortunately, for the Callaghan Complex, BLM cannot commit to limiting its gather to ensure that the populations in each individual HMA remain at or above 4x the current high-AML. BLM manages the complex as a whole and horses move around quite a bit, so it is unknown where they will be during the actual gather (or where they may move while the gather is ongoing). The HMAP says, "[d]ue to animal interchange and population fluctuations between the HMAs, BLM will manage these HMAs as a Complex." CAL_09185. Also, BLM will be gathering horses from outside the HMAs/Complex, so trying to assign them to a specific HMA for purposes of an agreement would be impossible. However, even if BLM is successful in gathering the full 2,000 planned horses, BLM estimates that will still leave the population of the complex at over 3,100 horses with a high AML for the complex of 552 horses. So, complex wide, BLM anticipates that the wild horse population will still be roughly 5.5x high-AML.


We would certainly like to avoid emergency motion practice to the extent possible and we hope this will give your client some assurance. Please let me know if you would like to discuss further.


Much obliged,

Davis


P.S. Cc'ing my colleague, Adam Estacio, who will be helping out on this case. Please include him on further communications.

[Quoted text hidden]

---

**Rae Lovko** <rlovko@greenfirelaw.com>                                          Mon, Jun 1, 2026 at 4:54 PM
To: "Backer, Davis (ENRD)" <Davis.Backer@usdoj.gov>
Cc: "Estacio, Adam (ENRD)" <Adam.Estacio@usdoj.gov>

Thank you for discussing this matter today.

As I mentioned, BLM has in the past broken down roundups by HMAs in its tentative gather schedules -- even when the HMAs are part of a complex of HMAs. Regardless, AML is supposed to be set HMA by HMA. I am aware of no law or case decision that has held overpopulation determinations and gathers can be based on the congregate AML for a Complex.

For the Callaghan Complex Gather Plan, BLM determined an overpopulation of 4,837 wild horses, with 153 excess horses associated with Bald Mountain, 2,404 excess horses associated with Callaghan, 12 excess horses associated with the Hickison HMA, and 2,268 wild horses associated with the South Shoshone HMA. In July, the agency intends to gather 2,000 of these excess horses. If the agency does not distribute the gather throughout the Complex, but instead does as Plaintiffs fear and only removes 2,000 from one HMA (such as the South Shoshone HMA), then the as-applied implementation of the plan will violate the Wild Horse Act and NEPA.

Table 1: Estimated Population and Removal Numbers to Achieve Low AML.

| HMA/HA | Acres | AML | Estimated Adult Population, February 2025 | Estimated Population, Late 2025 | Estimated Excess, Late 2025 |
|---|---|---|---|---|---|
| Bald Mountain HMA | 139,875 | 129-215 | 246 | 282 | 153 |
| Callaghan HMA | 133,093 | 134-237 | 2,207 | 2,538 | 2,404 |
| Hickison HMA (North Portion Only) | 17,485 | 0 | 12 | 12 | 12 |
| North Shoshone HA | 175,131[2] | 0 | 0[1] | 0 | 0[1] |
| South Shoshone HMA | 156,156 | 60-100 | 2,025 | 2,328 | 2,268 |
| Total | | 323-552 | 4,489 | 5,160 | 4,837 |

[1]The current estimated adult population size is based on statistical analysis of aerial survey data from February 2025. The estimated number of excess animals is the number above low AML that would need to be removed reflect expected herd size by late 2025; this is based on the February 2025 adults, plus an expected 15% annual growth rate which is a conservative annual rate to assume. These numbers will continue to grow each year due to normal reproduction.
[1] Population included with South Shoshone HMA. All horses in the North Shoshone HA will be removed.
[2] 151,513 acres of the North Shoshone HA are within the Callaghan Complex boundary. 71,170 (41%) of those acres are privately owned.

6/8/26, 12:49 PM Greenfire Law, P.C. Mail - Wild Horse Education v. BLM (2:26-cv-01524) (Nev.)

Case 3:26-cv-00423-MMD-CSD Document 25-1 Filed 06/10/26 Page 11 of 14

Sticking with the South Shoshone HMA as an example, if 2,000 horses are removed from in and around this HMA, then the population left would be approximately 128 wild horses. This is a ridiculously low number of horses for the available acreage, forage, and water. BLM has previously acknowledged that a high AML of 100 for South Shoshone was too low. And, South Shoshone has repeatedly had more than 400 wild horses in it without any damage to the range. On the other hand, if the number of horses gathered is spread out among the Bald Mountain, Callaghan, Hickison, North Shoshone, and South Shoshone HMAs, then removing 2,000 will not take the populations too close to high AML and allow the merits of this litigation to be addressed.

I understand that BLM will not agree to remove more than 4x the high AML for each of the HMAs., but I hope you understand that Plaintiffs cannot simply agree that the Gather Plan lawfully allows the removal of 2,000 wild horses from any one given area in the million acres addressed by the plan. It is for this very reason that many EAs for gather plans actually address trap site locations.

One more suggestion - would BLM agree not to remove more than 1,000 horses associated with the South Shoshone HMA and no more than 1,000 horses for the Bald Mountain HMA? It would be highly unusual (based on past gathers) for BLM to remove more than that at one trap site location anyway...

Otherwise, Plaintiffs are preparing a preliminary injunction motion. I hope to file it this week - but I definitely will have filed by next week.

Best,

Rae
[Quoted text hidden]

---

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>          Tue, Jun 2, 2026 at 9:20 AM
To: Rae Lovko <rlovko@greenfirelaw.com>
Cc: "Estacio, Adam (ENRD)" <Adam.Estacio@usdoj.gov>

Hi, Rae - -

For the reasons we discussed yesterday, BLM cannot commit to the limitations you've outlined below. Because of the connectivity between the HMAs and the fact that many of the horses within the complex are outside individual HMA boundaries, BLM and its contractors simply do not—and cannot—know where exactly the horses will be when it comes time to gather. In the event they are concentrated on just one or two of the larger HMAs, they may have to gather more in those locations. In the event the horses are more spread out, the gather will be as well.

With respect to your highlighted ask below, it's not clear why WHE is asking that BLM commit to gathering no more than 1,000 horses from the Bald Mountain HMA when the table you included in your email indicates that there are less than 300 horses there. Perhaps you meant the Callaghan HMA. In any event, BLM cannot commit to limiting its operation beyond the representations I've already shared with you.

In the event your client intends on filing a motion for preliminary injunction, please prepare a motion requesting a briefing schedule for my review as soon as possible. Defendants will require 14 days for their response. I am available to review as soon as it is ready.

Thank you,

Davis

6/8/26, 12:49 PM Greenfire Law, PC Mail - Wild Horse Education v. BLM (2:26-cv-1524) (D. Nev.)

Case 3:26-cv-00423-MMD-CSD Document 25-1 Filed 06/10/26 Page 12 of 14

**From:** Rae Lovko <rlovko@greenfirelaw.com>
**Sent:** Monday, June 1, 2026 5:54 PM
**To:** Backer, Davis (ENRD) <Davis.Backer@usdoj.gov>
**Cc:** Estacio, Adam (ENRD) <Adam.Estacio@usdoj.gov>
**Subject:** Re: [EXTERNAL] Re: Wild Horse Education v. BLM (2:26-cv-1524) (D. Nev.)

Thank you for discussing this matter today.

As I mentioned, BLM has in the past broken down roundups by HMAs in its tentative gather schedules -- even when the HMAs are part of a complex of HMAs. Regardless, AML is supposed to be set HMA by HMA. I am aware of no law or case decision that has held overpopulation determinations and gathers can be based on the congregate AML for a Complex.

For the Callaghan Complex Gather Plan, BLM determined an overpopulation of 4,837 wild horses, with 153 excess horses associated with Bald Mountain, 2,404 excess horses associated with Callaghan, 12 excess horses associated with the Hickison HMA, and 2,268 wild horses associated with the South Shoshone HMA. In July, the agency intends to gather 2,000 of these excess horses. If the agency does not distribute the gather throughout the Complex, but instead does as Plaintiffs fear and only removes 2,000 from one HMA (such as the South Shoshone HMA), then the as-applied implementation of the plan will violate the Wild Horse Act and NEPA.

Table 1: Estimated Population and Removal Numbers to Achieve Low AML.

| HMA/HA | Acres | AML | Estimated Adult Population, February 2025 | Estimated Population, Late 2025 | Estimated Excess, Late 2025 |
|---|---|---|---|---|---|
| Bald Mountain HMA | 139,875 | 129-215 | 246 | 282 | 153 |
| Callaghan HMA | 133,093 | 134-237 | 2,207 | 2,538 | 2,404 |
| Hickison HMA (North Portion Only) | 17,485 | 0 | 12 | 12 | 12 |
| North Shoshone HA | 175,131[2] | 0 | 0 [1] | 0 | 0 [1] |
| South Shoshone HMA | 156,156 | 60-100 | 2,025 | 2,328 | 2,268 |
| Total | | 323-552 | 4,489 | 5,160 | 4,837 |

The current estimated adult population size is based on statistical analysis of aerial survey data from February 2025. The estimated number of excess animals is the number above low AML that would need to be removed reflect expected herd size by late 2025; this is based on the February 2025 adults, plus an expected 15% annual growth rate which is a conservative annual rate to assume. These numbers will continue to grow each year due to normal reproduction.
[1] Population included with South Shoshone HMA. All horses in the North Shoshone HA will be removed.
[2] 151,513 acres of the North Shoshone HA are within the Callaghan Complex boundary. 71,170 (41%) of those acres are privately owned.

[Quoted text hidden]
[Quoted text hidden]

---

**Rae Lovko** <rlovko@greenfirelaw.com>                                    Tue, Jun 2, 2026 at 1:52 PM
To: "Backer, Davis (ENRD)" <Davis.Backer@usdoj.gov>
Cc: "Estacio, Adam (ENRD)" <Adam.Estacio@usdoj.gov>

I did mean the Callaghan HMA (and not Bald Mountain) - but as this does not change BLM's position, we will be filing a motion for preliminary injunction.
As regards briefing, typically oppositions are due within a week. Plaintiffs oppose any unnecessary delay, and their motion should be relatively short. That is, there does not appear to be a need for more than one week. If you want to ask the Court for 2 weeks, then you should file a motion asking the Court for this. Plaintiffs cannot agree to a joint briefing schedule, however.

Rae Lovko, Esq.
**Greenfire Law, PC**
2748 Adeline Street, Suite A
Berkeley, CA 94703

6/8/26, 12:49 PM                    Greenfire Law, P.C. Mail - Wild Horse Education v. BLM (3:26-cv-00524) (D. Nev.)

Case 3:26-cv-00423-MMD-CSD    Document 25-1    Filed 06/10/26    Page 13 of 14

T: 510.900.9502 x 710
rlovko@greenfirelaw.com

PRIVILEGE AND CONFIDENTIALITY NOTICE

This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact me immediately by return e-mail or at 510-900-9502 x 2, and destroy the original transmission and its attachments without reading or saving in any manner.

[Quoted text hidden]

---

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>                    Tue, Jun 2, 2026 at 3:02 PM
To: Rae Lovko <rlovko@greenfirelaw.com>
Cc: "Estacio, Adam (ENRD)" <Adam.Estacio@usdoj.gov>

Rae, to be clear, are you suggesting that plaintiffs intend to oppose the requested 14 days?

db

[Quoted text hidden]

---

**Rae Lovko** <rlovko@greenfirelaw.com>                    Tue, Jun 2, 2026 at 3:54 PM
To: "Backer, Davis (ENRD)" <Davis.Backer@usdoj.gov>
Cc: "Estacio, Adam (ENRD)" <Adam.Estacio@usdoj.gov>

Depends on why you are asking for it - what reasons exist? In theory, a two week deadline is fine - but, I have seen courts and BLM grant extensions only to subsequently hold it against Plaintiffs that the matter wasn't heard more quickly.

I suggest you ask for your 14 days, if you really think they are necessary. You can state:Plaintiffs do not oppose Defendants' proposed briefing schedule provided the delayed briefing is not used to argue that the balance of hardships weighs in BLM's favor.
[Quoted text hidden]

---

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>                    Tue, Jun 2, 2026 at 4:01 PM
To: Rae Lovko <rlovko@greenfirelaw.com>
Cc: "Estacio, Adam (ENRD)" <Adam.Estacio@usdoj.gov>

Rae, I have a number of competing deadlines over the next three weeks that I'm trying to balance here. I am preparing a motion requesting a briefing schedule and intend to file it today. I am open to a reasonable accommodation but unless you object, I am planning on asking that the court enter the following schedule:

Plaintiffs' motion for preliminary injunction: June 5

Defendants' response: June 19

Plaintiffs' reply (if any): June 26

That should give the court enough time to consider the parties' filings and issue a decision prior to the gather.

Please call me as soon as possible if you would like to discuss: 202-305-5469

[Quoted text hidden]

---

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>                    Tue, Jun 2, 2026 at 4:17 PM
To: Rae Lovko <rlovko@greenfirelaw.com>
Cc: "Estacio, Adam (ENRD)" <Adam.Estacio@usdoj.gov>

Also, I should add that Defendants cannot agree to represent that they will not raise possible delay arguments in response to Plaintiffs' PI motion when Plaintiffs have been aware of this scheduled gather since February.

db

[Quoted text hidden]

---

**Backer, Davis (ENRD)** <Davis.Backer@usdoj.gov>                    Tue, Jun 2, 2026 at 5:43 PM
To: Rae Lovko <rlovko@greenfirelaw.com>
Cc: "Estacio, Adam (ENRD)" <Adam.Estacio@usdoj.gov>

Rae, to the close the loop on this, I have revised our motion to simply ask for 14 days to respond to any forthcoming motion for emergency relief (as opposed to the dates certain I outlined in my previous email). I've represented Plaintiffs' position verbatim as expressed in your last email.

Thank you,

Davis

[Quoted text hidden]